Philpot *v.* McArthur.

---

## Philpot *vs.* McArthur.

The death of a plaintiff during the pendency of his suit, and the insolvency of his estate, do not discharge the indorser of the writ from his liability as such.

If one plead a decree of insolvency made by the Probate Court, it should be with an averment of *prout patet per recordum*, and with a *profert* of the same.

Such a defect in pleading, however, can only be taken advantage of, on *special demurrer*.

Scire facias, against the defendant as *indorser* of an original writ. The facts are succinctly and clearly stated in the opinion of the Court ; the general question being, whether the death of *Scolly G. Usher,* the original plaintiff, during the pendency of his suit, "and the insolvency of his estate, discharged the de-"fendant from the contract created by his indorsement."

*Howard,* for the plaintiff, argued that it did not. The death of the plaintiff during the pendency of the suit does not abate it. *Maine Stat. ch.* 52, *sec.* 21, 22. The indorser of an original writ is surety, not for the *life* of the plaintiff, but for his *ability* for the payment of the defendant's judgment for costs,

in that action. *Maine·stat. ch.* 59, *sec.* 8; *Strout & al. v. Bradbury & al.* 5 *Greenl.* 316; *Ely & al. v. Forward & al.* 7 *Mass.* 28; *Caldwell v. Lovett,* 13 *Mass.* 423; *Ruggles v. Ives,* 6 *Mass.* 495; *Gilbert & al. v. Nantucket Bank,* 5 *Mass.* 98; *Chapman v. Phillips,* 8 *Pick.* 28.

The case is like that of an indorser of a note,—liable on certain contingencies. — Or like that of a surety generally, who agrees to pay if the principal fail or avoid.

It is unlike the case of bail. Bail may *surrender* his principal and discharge himself—an indorser cannot. He may make himself a witness by surrendering—an indorser cannot. *Ely & al. v. Forward & al.* 7 *Mass.* 28; *Miller v. Washburn,* 11 *Mass.* 412. Bail is surety for the *person* of his principal—an indorser is not.

The indorser's undertaking is for *the benefit of the defendant,* and should therefore continue as long as the defendant is held to answer to the suit. Hence, if the death of the plaintiff does not defeat the action, it should not discharge the indorser. — The statute does not contemplate any such discharge, otherwise it would have provided some new pledge or security to the defendant.

Neither the Court nor the plaintiff can discharge, or change, an indorser. *Ely & al v. Forward & al.* before cited; *Caldwell v. Lovett,* 13 *Mass.* 422.

The plaintiff becoming *nonsuit* does not discharge the indorser of the writ. *Talbot v. Whiting,* 10 *Mass.* 358; *Strout & al. v. Bradbury & al.* before cited. Nor does the delay of the defendant in obtaining execution. *Miller v. Washburn,* before cited. Hence it may be inferred, that the indorser will not be discharged, though by delay or accident he may have lost his remedy over against the plaintiff.

The statute *ch.* 59, regulating the indorsement of writs, makes the indorser liable to pay costs in case of the *avoidance* or *inability* of the plaintiff. The case finds both conclusively. He *died* before judgment in his suit against the present plaintiff, and that was *avoidance.*

A return of the officer on the execution is not necessary in all cases to prove avoidance; for instance where a corporation

Philpot *v.* McArthur.

is plaintiff, or where the plaintiff dies pending the suit and an execution issues against his estate. *Palister v. Little,* 6 *Greenl.* 352.

The *inability* of the original plaintiff is conclusively shown by the record of his *insolvency. Hunt v. Whitney,* 4 *Mass.* 623.

To the point made on the other side, of the want of an averment by the plaintiff of *prout patet per recordum* in regard to the decree of insolvency, and a profert of the same, he cited, *Jevins v. Harridge,* 1 *Saund. R.* 9 ; *King v. Amory,* 1 *T. R.* 149.

*N. Emery* and *McArthur,* for the defendant.

The indorser of a writ is liable *conditionally,* and not absolutely. He is liable only in case of the *avoidance* or *inability* of his principal. And the only proper evidence of either is *the return* of an officer on the *execution. Ruggles v. Ives,* 6 *Mass.* 434.

If by act of God these conditions or a part of them even, cannot occur, then the indorser is discharged. *Basket v. Basket,* 2 *Mod. Rep.* 200 ; 1 *Rol. Abr.* 451 ; 1 *Cro. Eliz.* 398 ; 1 *Show. Rep.* 306 ; 1 *Dyer,* 66 ; *Shep. Touch.* 141. Those coercive measures contemplated by the law to enforce payment by the principal, cannot be taken, if the principal die. A man may be able to pay an execution for costs, on the adoption of those measures, when if he die his estate would be insolvent. Hence the reasonableness of his *conditional* liability. And in *Eaton v. Sloane,* 2 *N. H. Rep.* 554, it was decided that the fact of the insolvency of the principal's estate after his decease, was no proof of his inability to pay a bill of cost when alive.

After the death of the original plaintiff the suit was prosecuted by his administrator. But the condition of the indorser's liability depends upon the *plaintiff's* ability to support his action, and not upon the ability of plaintiff's *representative.*

Nor does the indorser stipulate for the good conduct of whoever may administer the estate of his principal. Nor that the estate shall be solvent. This may depend upon the amount of the allowance made by the Judge of Probate to the widow who in this case was the administratrix.

Ought this contract to be construed with more severity than that of bail? In bail the stipulation is that the defendant shall abide by and perform the judgment, yet if the principal die before judgment the bail is discharged. *Cro. Jac.* 165; *Mod. Rep.* 10, 267; *Tidd's Practice.* In the case of a bond for the faithful performance of duty by an officer (annually elected) " *while he shall remain in office,*" it has been decided to extend to *one year* only. In the case of an insurance on a vessel for a voyage, the liability of the insurers depends upon the *seaworthiness* of the vessel, upon the voyage being pursued without *deviation*, &c. But these conditions are not contained in the policy of insurance. Why should not courts be as ready in the case of indorsements of writs to supply those equitable considerations which they are ready to make in other cases?

If the original plaintiff had moved out of the State during the pendency of his suit the defendant might have required a new indorser. *Oysted v. Shed*, 8 *Mass.* 272. So the original defendant might have called for a new indorser on the death of the original plaintiff, and his neglecting to do it ought not to prejudice the old indorser.

A just construction of the indorser's liability, will not extend beyond the life of the plaintiff. *Chadbourne v. Hodgdon*, 1 *N. H. Rep.* 359.

That there should have been an averment by the plaintiff in his replication, of *prout patet per recordum*, and a profert of it, they cited, 1 *Chitty's Pl.* 32, 355, 356.

The opinion of the Court was delivered at the ensuing *May* term of the Court in *Oxford*, by

MELLEN C. J. — This is a *scire facias* against the defendant as *indorser* of an original writ. The declaration states that *Scolley G. Usher* commenced an action against the plaintiff; that pending the action *Usher* died; that *Sarah M. Usher*, the administratrix on his estate, became a party to the action and prosecuted the same, and that at *February* term, 1828, of the Court of Common Pleas, the present plaintiff, then defendant, recovered judgment for his costs against the goods and estate of the intestate, in the hands of said administratrix;

that the estate is deeply insolvent; that the plaintiff filed his judgment with the commissioners, which was allowed, and his dividend amounted to only *seventy-three* cents, the judgment having been rendered for $44,03 : that execution on said judgment issued, and the amount of the dividend was indorsed thereon ; and that the defendant was the indorser of the original writ. To this declaration the defendant pleaded ten special pleas in bar. *Three* issues in fact were joined, which have not yet been tried. In the other *seven* sets of pleadings, there are joinders in demurrer. In the argument no reliance seemed to be placed on any of the demurrers, except the *special* one joined in the seventh set of pleadings, which will be considered hereafter. The *general question* on the merits of the cause arises out of the facts set forth in the declaration, and may be considered in the same manner as though there had been a general demurrer to it ; and that question is whether the death of *Scolley G. Usher*, and the insolvency of his estate, have discharged the defendant from the contract created by his indorsement. In *Ruggles & al. v. Ives*, 6 *Mass.* 494, *Parsons C. J.* observes, " If the defendant recover costs, the indorser is made " liable on the *avoidance* or *inability* of the plaintiff to pay the " costs. Whether the principal has or has not avoided, is *mat-* " *ter of record,* arising from the *return upon the execution.* Up- " on these principles, an execution must issue and be returned, " before a *scire facias* can issue against the indorser." These principles seem to be unquestionable when applied to a case where the original plaintiff is *living*, and execution can regularly issue against him ; in such case the preliminary steps, abovementioned can always be taken by the defendant. Perhaps they are also applicable to a case where the original plaintiff dies *solvent ;* for then execution can issue, and a return of *nulla bona* may be made, if the administrator should not show property to the officer, wherewith to satisfy the execution. But in the case of an *insolvent* estate, no execution can by law issue against the administrator, upon a judgment rendered against the goods and estate of the intestate in the hands of such administrator. This case then does not fall within the principles laid down by the Court in *Ruggles & al. v. Ives*. The law requires that the

original defendant should use reasonable diligence to obtain payment of the costs of the original plaintiff; but it does not require what is impossible ; much less what is illegal. The only question, then, as we have before observed, on the merits is, whether the death of *Scolley G. Usher*, and the insolvency of his estate, have operated to discharge the defendant from all liability as indorser of the plaintiff's writ. The defendant has contended that he was discharged by the mere death of *Scolley G. Usher*, independent of the insolvency of his estate, as bail are under certain circumstances ; but the contract of an indorser differs from that of bail. An indorser has no control over the action, and cannot *by any act of his own*, release himself from liability ; but such is not the situation of bail. Under certain circumstances the bail may put an end to his liability by a surrender of the principal, at any time before final judgment against him on *scire facias*.

We return to the question " Do the *death* of a plaintiff and " the *insolvency* of his estate discharge the indorser ?" The case of *Eaton and Sloane*, 2 *N. H. Rep.* 552, was decided upon the statute of *New-Hampshire*, which requires that an execution should issue against the *plaintiff* in the original action and be returned unsatisfied, before the indorser can be discharged ; and in that case the above preliminary had never been complied with, and could not have been, as the estate of the original plaintiff was insolvent. Our statute on this subject requires no such preliminary process : the indorser is liable upon the avoidance or inability of the plaintiff to pay the defendant's costs. In the case before us he obtained all in his power out of the estate of *Usher*, under a decree of the Judge of Probate, amounting to no more than *seventy-three cents*. The present plaintiff does not ground his claim against the indorser on the *avoidance* of the original plaintiff, but the insolvency of his estate ; and we cannot perceive any difference, in respect to the plaintiff, between his being unable to obtain satisfaction of his judgment on account of the insolvency of *his estate*, or of his insolvency in *his life time*, and inability to satisfy the execution, even if he were alive now. The plaintiff's loss would be the same in both cases, with the exception of the trifling dividend above-mention-

ed. The indorsement of a writ is by law required and intended as a security to the defendant against loss, in a certain event; in the present case that event has occurred. Ought the Court so to construe the statute as to pronounce the indorser discharged from his contract by that very event which has occasioned a loss to the party, for whose benefit it was specially furnished? The Court can perceive neither the reason or justice of such a proceeding. But the counsel for the defendant has prayed in aid of the defence a well settled principle of the common law, namely, that when the condition of a bond consists of *two* parts in the *disjunctive*, and both are possible at the time of making the bond, and afterwards *one* of them becomes impossible by the act of God or the party, the obligor is not bound to perform the *other*. The reason is, the obligor never bound himself **absolutely** to perform *either* part. He had by the condition an *election*, and that has been taken from him. The *disjunctive* condition was inserted for the benefit of the *obligor*, not of the *obligee*. But is such a case similar to the present? The indorser had no conditions to perform, dependent on his *election*. Besides, the statute has declared the *two events*, upon the happening of *which* or of *either* of them, the liability of the indorser was to attach. The *alternative* was introduced for the benefit of the *original defendant*, now plaintiff, and not for the *indorser*, the present defendant. Over these events he had no control. We do not perceive how the principle which the counsel relies upon is applicable to the case under consideration. The act of God has not had any effect upon the statute alternative. It did not *create* the insolvency of the intestate; he was insolvent when he died. — Upon the *general question of liability*, which has been the principal subject presented to the Court by the counsel and discussed by them, we are of opinion that the plaintiff is entitled to recover.

With respect to all the demurrers, except the *special* demurrer in the seventh set of pleadings, we would observe generally, that they present no question of law which can avail the defendant; and as little notice was taken of them in the argument, we dismiss the further consideration of them, and proceed to the examination of the *special* demurrer before mentioned.

As we have before observed, the plaintiff sets forth in his declaration among other things, the representation of *Scolley G. Usher's* estate as insolvent; that it proved to be so, and that a decree of distribution was made accordingly. The defendant in his seventh plea alleges that the administratrix " had in her " hands, and under her administration, sufficient to pay all costs " recovered by the said *Philpot* in the aforesaid action, and all " prison charges." The plaintiff in his replication reaffirms the representation of said estate as insolvent, and alleges that the same was " decreed to be insolvent," at a Court of Probate holden in the County of *Cumberland*, and that the same estate is insolvent. To this replication the defendant has given a *special* demurrer, because the plaintiff has not averred a *prout patet per recordum*, and made a *profert* of the same. " In debt " upon a judgment or other matter of record, unless when it is " stated as inducement, it is necessary, after showing the mat- " ter of record, to refer to it by the *prout patet per recordum*, " but the omission will be aided, unless the defendant demur " specially." 1 *Chit. Pl.* 355, 356; *Morse & al. v. James, Willes*, 127. In the case in *Willes*, the omission of the averment was in a plea in bar. For the above reason the replication is bad; but we must go back to the *first fault*, and that is in the plea; for the allegation in the writ, of the insolvency of the estate and decree of distribution, though without a *prout patet per recordum*, is aided and sufficient, because not *specially demurred* to. Now it is very plain that it is no answer to such a declaration, for the defendant to say that there was property in the hands of the administratrix sufficient to pay the *present plaintiff's* demand; for there were many *other* demands; and *other* creditors were entitled to a share of the property as well as the plaintiff; and the proportions of all have been settled by the decree of the Judge of Probate. For these reasons the plea is fatally defective and insufficient. The first *plea* is adjudged bad and insufficient; and all the *replications* to the other pleas are adjudged *good* and *sufficient;* for though we have stated above that the replication specially demurred to is bad, yet a *bad replication* may be adjudged *sufficient* where the *plea is bad. Ainslie v. Martin*, 9 *Mass.* 454.